U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
JUL 22 2021
CLERK, U.S. DISTRICT COURT
By______ Deputy

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **JENNIFER GREEN** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. 4:20-CV-708-BJ** |
| | § | |
| **OX CAR CARE, INC., ET AL.** | § | |

**ORDER PARTIALLY GRANTING DEFENDANT OX CAR CARE, INC.'S MOTION TO DISMISS AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION AND TRANSFERRING CASE**

Pending before the Court is Defendant Ox Car Care, Inc. ("Ox Car")'s Motion to Dismiss Amended Complaint for Lack of Personal Jurisdiction [doc. 38], filed May 27, 2021. Having carefully considered the motion, response, reply, and related filings, the Court concludes that Ox Car's Motion to Dismiss should be **PARTIALLY GRANTED** and the case should be **TRANSFERRED** to the U.S. District Court for the Central District of California, Southern Division.

In her Amended Complaint filed on May 6, 2021, Plaintiff Jennifer Green alleges causes of action against Defendant for violations of two sections of the Telephone Consumer Protection Act ("TCPA"), 47 U.SC. 227.[1] (Plaintiff's Amended Complaint ("Pl.'s Am. Compl.") at 4-7.) These claims arise out of alleged phone calls Defendant made between December 2019 and March 2020 to Plaintiff's cell phone number ending in 6111 soliciting Plaintiff to purchase a car warranty.[2] (Pl.'s Am. Compl at 3-4.)

---

[1] The Court notes that Plaintiff also sued Defendant VSC Media Group, LLC, who is a vendor with its corporate headquarters in Fort Lauderdale, Florida. However, Defendant VSC Media Group, LLC was voluntarily dismissed by Plaintiff on July 6, 2021.

[2] In December 2019, Defendant VSC Media Group allegedly delivered a campaign containing lists of call-lead numbers to Ox Car in California. Such list contained the alleged phone number for Plaintiff. (Appendix to Defendant's Motion to Dismiss Amended Complaint for Lack of Personal Jurisdiction ("Def.'s App.") at Exhibit ("Ex.") A.)

As to jurisdiction, Plaintiff, as relevant here, states:

> 4. Defendant Ox Car is a business entity with headquarters, principal place of business or otherwise valid mailing address located at 18012 Cowan, Suite 100, Irvine, California 92612.
>
> . . . .
>
> 10. Defendant Ox Car represents that it has covered over one million vehicles through its warranties.
>
> 11. Upon information and belief, tens of thousands of those vehicles are registered in the State of Texas.
>
> 12. Upon information and belief, Defendant Ox Car has paid warranty claims for tens of thousands of vehicles registered in Texas.
>
> 13. Upon information and belief, Defendant Ox Car obtains substantial revenue from individuals who reside in Texas.
>
> 14. Upon information and belief, Defendant Ox Car advertises and markets in Texas.
>
> 15. Upon information and belief, agents, call centers and leader generators place calls on behalf of Ox Car Care to numerous individuals who reside in Texas.
>
> 16. Ox Car's agent placed repeated calls to Plaintiff, a resident of Texas, seeking to solicit business from Plaintiff.
>
> . . . .
>
> 20. This Court has general and specific personal jurisdiction over Defendants.

(Pl.'s Am. Compl. at 2-3.)

In its brief in support of its motion to dismiss, Ox Car claims that the Court lacks both general and specific jurisdiction over Ox Car, which "is a Delaware company, organized and having its principal place of business in . . . California." (Defendant's Brief in Support of Defendant's Motion to Dismiss Amended Complaint for Lack of Personal Jurisdiction ("Def.'s Br.") at 1.) Specifically, Ox Car, *inter alia*, states:

Green claims that the Court has personal jurisdiction over Ox Car because she contends that "the Court has general and specific personal jurisdiction over Ox Car." No facts allege that Ox Car has any continuous and systematic affiliation with the State of Texas. Green alleges that Ox Car is a "business entity" with its "headquarters" and "principal place of business" in Irvine, California. Ox Car, however, operates outside of Texas as it was established in Delaware, headquartered in Orange County, California, with over 35 employees. . . .

In the [First Amended Complaint ("FAC")], Green alleges that "Defendant" through someone or some person made calls without specifying where the alleged misconduct occurred or where the alleged harm was felt. Green alleges that she "has a cell phone number" and has only used this phone number "for residential purposes." Green does not allege the identity of any of these individuals and, significantly, does not allege that any of this misconduct occurred in the state of Texas.

One of Ox Car's marketing partners, VSC Media Group, transmitted a call lead to Ox Car in California containing a form completed by Green on www.free-auto-repairs.com. VSC Media Group is located in Fort Lauderdale, Florida. The number Green contends was called has a New Hampshire area-code number, (603) 438-6111. This is the same number that VSC Media Group provided to Ox Car. Ox Car's employees logged into their computer at their workplace station located in California. Its employees then accessed a VICIdial web-based inference, which provided the employees with (603) 438-6111 to call. At most, the lead screen indicated to employees that the state associated with Green may have been New Hampshire. Between December 2019 through August 2020, Ox Car's California employees made approximately 32 calls from California to the New Hampshire area-code number, (603) 438-6111. No Ox Car employee, however, was or could have been in possession of information that Green was located in Texas.

. . . .

General jurisdiction does not exist over Ox Car in Texas because its contacts with Texas are not so substantial, continuous, and systematic such that Ox Car is "essentially at home" in Texas.

. . . .

Specific jurisdiction does not exist over Ox Car in Texas because it did [sic] purposely direct its conduct into Texas, the claims arose from the acts in California and not the alleged Texas receipt of such calls. The exercise of jurisdiction over Ox Car offends traditional notions of fair play and substantial justice.

(Def.'s Br. at 2-4, 6, 8 (footnotes and internal citations omitted).)

In her response, Green claims that her Amended Complaint alleges sufficient facts to establish general and specific jurisdiction over Ox Car. (Plaintiff's Memorandum of Law in Opposition to Motion to Dismiss Amended Complaint ("Pl.'s Resp.") at 3-8.) Specifically, Green states:

> In the Amended Complaint, Plaintiff alleges that "Defendant Ox Car represents that it has covered over one million vehicles through its warranties." That is a reference to Ox Car's website which states[,] "This short video will simply explain why over a million drivers have already chosen Ox Car Care to help protect their cars from expensive breakdowns!" Where almost 29 million people[—]just short of 10% of Americans[—]reside in Texas, it is reasonable to conclude that tens of thousands of warranties are sold by Ox Car to Texans. Plaintiff therefore averred that Ox Car derived substantial revenue from Texas. In its Motion to Dismiss, Ox Car repeatedly points out that Ms. Green's phone has a New Hampshire area code, but does not deny the aforementioned averments about its business in and revenue from the State of Texas.
>
> . . . .
>
> For specific jurisdiction to exist, the foreign defendant must purposefully do some act or consummate some transaction in the forum state and the cause of action must arise from or [b]e connected with such act or transaction. Here in the Amended Complaint, plaintiff alleges specific acts by Ox Car where Ox Car avails itself to the forum in connection with Plaintiff and the facts give rise to this lawsuit. For instance, Plaintiff alleges that Defendant specifically and purposefully availed itself to Texas by directing calls to Plaintiff in Texas. The Complaint describes in detail the calls made to Plaintiff, who was at all times relevant hereto a resident of Texas. Accordingly, there is a sufficient basis to find specific jurisdiction on the Amended Complaint alone.

(Pl.'s Resp. at 4, 7 (footnotes and internal citations omitted).) Plaintiff also requests that, if the Court finds that it lacks personal jurisdiction over Ox Car, the Court transfer the case to the Central District of California. (Pl.'s Resp. at 8.)

In its reply, Ox Car states that it "only receives 'approximately 12% of its sales . . . from Texas' and 'any revenue that Ox Car receives from individuals who reside in Texas are the down payments from the consumers.'" (Defendant's Reply in Support of Motion to Dismiss Amended Complaint for Lack of Personal Jurisdiction ("Def.'s Reply") at 4 (quoting Defendant's Appendix

to Defendant's Motion to Dismiss Amended Complaint for Lack of Personal Jurisdiction ("Def.'s App.") at 4) (footnotes omitted).) Ox Car also claims that it "'has not paid warranty claims for tens of thousands of vehicles registered in Texas as Green claims in Paragraph 12 of the Amended Complaint.'" (Def.'s Reply at 4 (quoting Def's App. at 4).) In addition, Ox Car argues that "Green has not alleged and not argued any facts pertaining to the interactivity of Ox Car's website." (Def.'s Reply at 5.) Ox Car claims that "there is no evidence that Ox Car conducted business over the internet by engaging in business transactions with Texas residents or by entering into contracts over the internet." Def.'s Reply at 6.)

Federal Rule of Civil Procedure 12(b)(2) allows for the dismissal of an action in which the court lacks personal jurisdiction over the defendant. A federal court may assert jurisdiction over a nonresident defendant in a diversity suit if the state's long arm statute applies and due process is satisfied under the Fourteenth Amendment to the United States Constitution. *Cycles, Ltd. v. W.J. Digby, Inc.*, 889 F.2d 612, 616 (5th Cir. 1989). Texas courts have interpreted the Texas long-arm statute as "extending to the limits of due process." *Bullion v. Gillespie,* 895 F.2d 213, 215 (5th Cir. 1990). Accordingly, to determine whether it may assert jurisdiction under the Texas long-arm statute, a federal court must determine whether jurisdiction comports with federal constitutional guarantees of due process. *Id.* at 216.

The party seeking to invoke federal jurisdiction bears the burden of establishing the requisite minimum contacts. *WNS, Inc. v. Farrow,* 884 F.2d 200, 203 (5th Cir. 1989); *Walker v. Williamson*, 131 F. Supp. 3d 580, 590 (S.D. Miss. 2015). Further, "uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of determining whether a

*prima facie* case for personal jurisdiction exists." *D.J. Invs., Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 546 (5th Cir. 1985); *see Walker*, 131 F. Supp. 3d at 590.

To establish personal jurisdiction over a defendant, that party must have "purposely availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state" and the exercise of jurisdiction over the defendant must not offend the "'traditional notions of fair play and substantive justice.'" *Tayama v. RIOM Corp.*, No. 2:11-CV-167-J, 2012 WL 556007, at *3 (N.D. Tex. Feb. 21, 2012) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945)). Minimum contacts with a state are established through specific or general jurisdiction. *See Tayama* 2012 WL 556007 at *3.

"General jurisdiction exists when a defendant's contacts with the forum state are unrelated to the cause of action but are 'continuous and systematic.'" *Revell v. Lidov*, 317 F.3d 467, 470 (5th Cir. 2002) (quoting *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 336 (5th Cir.1999)). "The 'continuous and systematic contacts test is a difficult one to meet, requiring extensive contacts between a defendant and a forum.'" *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) (quoting *Submersible Sys., Inc. v. Perforadora Cent., S.A.*, 249 F.3d 413, 419 (5th Cir. 2001)). To confer general jurisdiction, a defendant must have a sufficient business presence in the forum state. *Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 717 (5th Cir. 1999). Injecting a product, even in substantial volume, into a forum's "stream of commerce," without more, does not support general jurisdiction. *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 375 (5th Cir. 1987).

"Specific jurisdiction exists when Defendant's contacts with the forum 'arise from, or are directly related to, the cause of action.'" *Revell*, 317 F.3d at 470 (quoting *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001)). The Fifth Circuit has established a three-step analysis for determining whether specific jurisdiction exists: (1) whether the defendant has minimum contacts

with the forum state, *i.e.*, whether it purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable. *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006). "The minimum contacts review is fact-intensive and no single contact is decisive; the touchstone is whether the defendant's conduct shows that it reasonably anticipates being haled into court in the forum." *Evergreen Media Holdings, LLC v. Safran Co.*, 68 F. Supp. 3d 664, 675 (S.D. Tex. 2014) (internal quotations omitted). "The defendant must not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or the unilateral activity of another party or third party." *Id.*

If Plaintiff successfully establishes the first two steps for showing the Court has specific jurisdiction over the Defendant, "the burden shifts to the defendant to defeat jurisdiction by showing that its exercise would be unfair or unreasonable." *Sarkar v. Petroleum Co. of Trinidad & Tobago Ltd.*, No. H-15-2372, 2016 WL 3568114, at *14 (S.D. Tex. June 23, 2016). "In evaluating whether the exercise of personal jurisdiction over the defendants would be unfair, courts examine a number of factors, including: (1) the defendant's burden; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the state's shared interest in furthering social policies." *DLR, LLC v. Montoya*, 465 F. Supp. 3d 676, 681 (N.D. Tex. 2020).

With respect to general jurisdiction, the Court notes that all of Ox Car's alleged contacts with Texas appear to arise from or are directly related to the underlying cause of action and were not continuous and systematic contacts with Texas. The evidence, as noted by Ox Car and not disputed by Green, indicates the following: (1) Ox Car is a Delaware entity with its principal place

of business in California; (2) all approximately 32 calls made to Green were to Green's phone number that contains the New Hampshire area code of 603; (3) all of Ox Car's over 35 employees work out of Ox Car's headquarters in Irving, California; (4) Ox Car has never had any offices or personnel in Texas; (5) Ox Car handles all communications with its customers from California and has never visited any customers in Texas; (6) Ox Car has never maintained any bank accounts or account with any other financial or investment institution in Texas; (7) Ox Car has never maintained a registered agent for service in Texas; and (8) Ox Car advertises on radio and television but does not have much, if any, control over the state where the radio or television advertisement circulates.[3] (Def.'s Br. at 1-4, 6-8; Def.'s App. at Ex. A.) Green's allegations that Ox Car made multiple phone calls to a cell phone of an individual residing in Texas to sell an extended car warranty and Ox Car's admission that it derives 12% of its sales revenue from the sale of such warranties from Texas, standing alone, are insufficient to establish general jurisdiction. *See*, *e.g.*, *Evergreen Media Holdings, LLC v. Safran Co.*, 68 F. Supp. 3d 664, 674 (S.D. Tex. 2014) ("An out-of-state defendant that merely does business with Texas businesses or customers will not be subject to general jurisdiction if it does not have a lasting physical presence in the state."); *Glazier Grp., Inc. v. Mandalay Corp.*, No. H-06-2752, 2007 WL 2021762, at * 10 (S.D. Tex. July 11, 2007) ("National advertising, not targeted to the forum state, has been found insufficient as a basis for general personal jurisdiction."); *Nelson v. MGM Grand Hotel, L.L.C.*, No. H-05-294, 2005 WL 1949536, at *3 (S.D. Tex. Aug. 12, 2005) (evidence that Defendant, an indirectly owned subsidiary of MGM Mirage, had sent representatives to make sales visits to Texas, operated a website that allowed reservations, solicited Texas residents by telephone, and

[3] The Court notes that Mardaresco, in the Declaration of Mike Mardaresco ("Mardaresco"), a general manager at Ox Car, states that, since November 2019, he has traveled to Texas on one occasion in January 2020 "to consider an administrative business that could handle Ox Car's warranty claims." (Def.'s App. at Ex. A.)

obtained revenue from Texas residents for services and goods provided to those residents in Nevada was insufficient to subject Defendant to general personal jurisdiction in Texas); *Dalton v. R&W Marine, Inc.*, 897 F.2d 1359, 1362 (5th Cir. 1990) (holding that corporate defendant lacked continuous and systematic contacts with the forum state where it entered into charters with its local subsidiaries that yielded some 12.9% of its total revenue, engaged in advertising that reached the forum state, and purchased vessels at marshals' sales within the state).

As to specific jurisdiction, as set forth above, the first two elements of a *prima-facie* case require Plaintiff to show: (1) Defendant has minimum contacts with Texas in that Defendant purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there and (2) Plaintiff's cause of action arises out of or results from Defendant's forum-related contacts. *See Seiferth*, 472 F.3d at 271. Thus, the core jurisdictional issue is whether Ox Car's calls to Plaintiff, targeted to a New Hampshire area code but received in Texas, satisfy the requirements that Ox Car purposely directed its activities toward Texas and that Plaintiff's claims arise out of or are related to Ox Car's contacts with Texas. *See Bristol-Myers Squibb Co. v. Superior Court of Calif., San Francisco Cty*, 137 S. Ct. 1773, 1781 (2017) ("In order for a court to exercise specific jurisdiction over a claim, there must be an 'affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State.'")

Viewing Plaintiff's assertions and the submitted evidence in the light most favorable to Plaintiff, the Court is not convinced that Ox Car's contacts with Texas are enough to give this Court specific personal jurisdiction over Ox Car as the alleged unwanted phone calls to Plaintiff were not targeted to a Texas phone number.[4] *See, e.g., Guadnola v. Hawaii Dep't of Educ.*, No.

---

[4] The Court notes that there is also evidence that Ox Car maintains a website. While a company's website that is found to be interactive (as opposed to passive) could provide evidence supporting a finding of personal

CIV-19-1114-G, 2021 WL 1093099, at *3 (W.D. Okla. Mar. 22, 2021) (finding that automated calls from Defendant, a public agency of the State of Hawaii, to an Oklahoma resident with a Hawaii-based cell phone number did not support a finding that Defendant purposefully directed such calls to Oklahoma as there were not facts indicating Defendant was aware or should have been aware of Plaintiff's Oklahoma residency); *Hood v. Am. Auto Care, LLC*, No. 18-cv-02807-PAB-SKC, 2020 WL 1333091, at *4 (D. Colo. Mar. 23, 2020) (holding that specific jurisdiction in Colorado was lacking over Defendants alleged to have violated the TCPA because Plaintiff advanced "no allegations or evidence that would allow the Court to infer that defendants knew [plaintiff's] Vermont phone number was associated with a Colorado resident"), *appeal docketed*, No. 20-1157 (10th Cir. Apr. 22, 2020); *Hastings v. Triumph Prop. Mgmt. Corp.*, No. 15cv312-LAB (RBB), 2015 WL 9008758, at *2 (S.D. Cal. Dec. 15, 2015); *Michaels v. Micamp Merch. Servs.*, No. CIV.A. 13-191E, 2013 WL 5970340, at *4 (W.D. Pa. Nov. 8, 2013). Rather, the actions of Ox Car were targeted to a phone number with a New Hampshire area code. Ox Car has presented a declaration from Mardaresco, the general manager of Ox Car, that, prior to the lawsuit being filed, neither he nor any "Ox Car employee . . . was or could have been in possession of information that the telephone number (603) 438-6111 belonged to any person or anything located in or from Texas." (Def.'s App. at Ex. A, page 4.) Moreover, Plaintiff does not point to any evidence indicating that Ox Car, prior to the lawsuit being filed, knew that Plaintiff's New Hampshire phone number was associated with a Texas resident. Thus, based on the allegations

---

jurisdiction over such company, Plaintiff does not offer any evidence to allow the Court to make such a finding in this case. *See, e.g.*, *Mieczkowski v. Masco Corp.*, 997 F. Supp. 782, 785-88 (E.D. Tex. 1998) (finding that the nature of the manufacturer's web site, combined with other factors such as the volume of business conducted in the state, provided a basis for the assertion of general personal jurisdiction over the manufacturer). While Plaintiff attaches a printout from Ox Car's website to her response to Defendant's motion, Plaintiff's only mention of Ox Car's website is to support her allegation in her Amended Complaint that "Defendant Ox Car represents that it has covered over one million vehicles through its warranties." (Pl.'s Resp. at 4 ; *see* Pl.'s Am. Compl. at 2.)

presented and the evidence before the Court, there is an insufficient connection between Texas, the forum state, and the underlying controversy involving multiple phone calls to a New Hampshire area code to allow the Court to exercise specific personal jurisdiction over Ox Car in this case.[5]

Plaintiff requests that the Court, if it does not find that it has personal jurisdiction over Ox Car, transfer the case to the Central District of California. Defendant, in its reply, objects to such transfer, claiming there are "no facts [that] demonstrate that the Central District of California is proper for all defendants—primarily, VSC Media Group." (Def.'s Reply at 10.) However, on July 6, 2021, Plaintiff filed a Notice of Voluntary Dismissal as to Defendant VSC Media Group, LLC Only. Consequently, for the convenience of the parties and in the interest of justice, the Court will **GRANT** Plaintiff's transfer request.

Based on the foregoing, it is **ORDERED** that Defendant Ox Car's Motion to Dismiss Amended Complaint for Lack of Personal Jurisdiction [doc. 38] is **PARTIALLY GRANTED** in that the Court concludes that it does not have personal jurisdiction over Defendant Ox Car. The Court will not, however, grant Defendant's request to dismiss the amended complaint.

It is further **ORDERED** that the above styled-and-numbered cause is **TRANSFERRED** to the United States District Court for the Central District of California, Southern Division.

SIGNED July 22, 2021.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

---

[5] The Court notes that, while Plaintiff requests that the Court consider Ox Cars' post-complaint contacts in analyzing whether it has personal jurisdiction over Ox Car, such consideration is not allowed. *See English Tea Shop USA Corp. v. Hall*, No. 3:20-CV-3453-B, 2021 WL 1966815, at *8 (N.D. Tex. May 17, 2021) ("[I]n assessing personal jurisdiction, the Court cannot consider post-complaint contacts."); *Glazier Group*, 2007 WL 2021762, at *8 (when assessing whether a Court has specific or general jurisdiction over a party, Courts in the Fifth Circuit "look[] to facts up to the filing of the complaint rather than postcomplaint conduct.").